**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION**

JASON MICHAEL DUVALL,

      Plaintiff,

  v.                                          Civil Action 2:19-cv-2346
                                                Magistrate Judge Jolson

COMMISSIONER OF SOCIAL
SECURITY,

      Defendant.

**OPINION AND ORDER**

Plaintiff, Jason Michael Duvall, filed this action seeking review of a decision of the Commissioner of Social Security ("Commissioner") denying his application for Disability Insurance Benefits ("DIB") under Title II. The parties in this matter consented to the Undersigned pursuant to 28 U.S.C. § 636(c). (Docs. 6, 8). For the reasons that follow, Plaintiff's Statement of Errors (Doc. 12) is **OVERRULED**, and judgment is entered in favor of Defendant.

**I. BACKGROUND**

    **A. Prior Proceedings**

Plaintiff filed an application for Disability Insurance Benefits on July 6, 2016 under Title II, alleging disability beginning on November 7, 2015. (Doc. 9, Tr. 152–58). His application was denied initially and again on reconsideration, and after a hearing held on August 29, 2018 (Tr. 35–57), Administrative Law Judge Kevin Plunkett (the "ALJ") issued an unfavorable decision. (Tr. 15–23). The Appeals Council denied Plaintiff's request for review making the ALJ's decision the final decision for purposes of judicial review. (Tr. 1–6).

Plaintiff filed this action on June 4, 2019 (Doc. 1), and the Commissioner filed the administrative record on August 13, 2019 (Doc. 9). Plaintiff filed a Statement of Specific Errors (Doc. 12), and the Commissioner responded (Doc. 14). No reply was filed.

### B. Relevant Medical Background

Plaintiff's statement of errors concerns his alleged physical impairments, particularly his spinal impairments. The ALJ helpfully summarized the relevant evidence:

> An MRI of the claimant's left hip was done on August 12, 2015 (1F/2). This showed unremarkable findings of the left hip.
>
> An MRI of the lumbar spine was performed on August 13, 2015 (1F/1). This demonstrated protrusions of disc material at L4-5 and L5-S1 levels, greater in degree at L4-5.
>
> Electrodiagnostic testing was performed on November 16, 2015 (3F/1). The results indicated left S1 radiculopathy without significant axonal loss.
>
> The claimant underwent lumbar surgery for L4-5 to L5-S1 decompression on February 23, 2016 (6F/7; 12F/20-22).
>
> An Outpatient PT Progress Report dated May 19, 2016 indicated that the claimant was experiencing increased pain in the left lower extremity; decreased strength in core, low back, and bilateral lower extremities; decreased range of motion of the lumbar spine, and decreased sensation in the left lower extremity. The claimant's physical therapist reported that the claimant was unable to complete most physical therapy activities secondary to pain (4F).
>
> An MRI of the lumbar spine was done on June 15, 2016 (5F/1-2). This indicated postsurgical changes on the left side at L4-5; enhancing soft tissue intensity of the left side; and posterolateral herniation to the left at L5-S1.
>
> On June 22, 2016, the claimant was seen by Dave Thompson, PA-C (6F) at OrthoNeuro for follow up of his lumbar MRI. The claimant noted having left leg pain, numbness, and weakness. He stated that he was taking Zanaflex, Neurontin, and Vicodin. The claimant reported feeling 30-40% better compared to where he was prior to surgery. On physical examination, the claimant was noted to walk with a limp and using a cane. The lower extremity sensation was decreased on the left compared to the right. Strength on the right was +5/5 and 4/5 on the left. Similar findings were indicated on September 2, 2016 (12F/6).

Eugene Lin, M.D., an independent medical examiner, evaluated the claimant on June 27, 2017 (16F). The claimant reported left lower extremity pain, greater than low back pain. He stated that the pain goes down the left lower extremity, with numbness and tingling down the foot. The claimant indicated that the pain is worse when walking. He stated that mediations do help. On physical examination, the claimant was noted to have left-sided antalgic gait and to use a cane. There was decreased strength in the left dorsi flexors with otherwise near symmetric strength in the bilateral lower extremities. Sensation was decreased globally over the left extremity. Range of motion of the lumbar spine showed 20 degrees of forward flexion, 10 degrees of side bending, and 10 degrees of extension. There was a well healed lumbar scar. The ranges of motion of the lumbar spine were noted to be self-restricted, compared with observed behaviors during functional tasks. Straight leg raises were positive bilaterally for low back pain and positive over the left side for radicular findings. Dr. Lin opined that the claimant would not be capable of full duty work secondary to ambulation difficulty, but would be restricted to sedentary work, with no lifting greater than 10 pounds. The doctor stated that these restrictions would be in place for a period of two months.

The claimant returned to OrthoNeuro on September 13, 2017. The examiner noted that the claimant had some slight weakness on the left with dorsiflexion and plantarflexion at 3+/5 when compared to the right at 4/5. The diagnostic impression was re-herniated disc, at L4-5 and L5-Sl with low-grade spondylolisthesis at L5-S1 and internal disc derangement L4 to S1 and status post decompression, L4 to S1 (1OF/1).

Larry Todd, D.O. an orthopedic spine surgeon, reported on January 3, 2018 that, despite previous decompression surgery, the claimant's pain had returned. Because of a re-herniated disc and significant disc collapse, Dr. Todd stated that the surgical option would be laminectomy, decompression, posterior spinal fusion, and instrumentation with interbody allograft, local bone graft, and supplemental bone graft alternative (12F/1).

An MRI of the lumbar spine was performed on March 18, 2018 (14F/1). This demonstrated multilevel degenerative disc disease, including mild circumferential disc bulge and moderate degenerative facet arthropathy at L4-5 and L5-S1.

On March 22, 2018, the claimant underwent repeat laminectomy, decompression, excision of spinal narrowing at the L4-5 and L5-S 1 levels and posterior spinal fusion instrumentation at the L4-5 and L5-Sl levels (19F/4).

The claimant presented to Larry Todd, D.O., his orthopedic surgeon, on June 18, 2018 for a three-month postop (19F). On physical examination, the claimant was noted to be stable. The claimant ranked has pain as 4/10. The doctor ordered, and

obtained, X-rays of the lumbar spine, which showed the hardware was holding and in good alignment. The claimant was noted to be improving, though he still had some back pain. There were no radicular complaints.

(Tr. 19–20).

### C. The ALJ's Decision

The ALJ found that Plaintiff had the following severe impairment: disorder of the spine. (Tr. 17). The ALJ held, however, that there was no medical opinion of record to indicate the existence of an impairment or combination of impairments that met or equaled in severity the level of the Listings of Impairments. (*Id.*).

As for Plaintiff's RFC, the ALJ found:

> [T]he claimant had the residual functional capacity to perform sedentary work as defined in 20 CFR 404.1567(a), except for the following limitations. The claimant can lift 10 pounds occasionally and less than 10 pounds frequently. He can push/pull as much as he can lift/carry. Over an eight-hour workday, the claimant can sit for six hours, stand for two hours, and walk for two hours, but will need to alternate to standing for 5 minutes after every 30 minutes of sitting, and alternate to sitting for every 20 minutes of standing or walking. He can occasionally climb ramps and stairs, but can never climb ladders, ropes, or scaffolds. He can occasionally stoop, kneel, crouch, and crawl. Finally, the claimant can operate foot controls with the left foot occasionally.

(Tr. 18). He found "that the claimant's medically determinable impairment could reasonably be expected to cause the alleged symptoms; however, the claimant's statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely consistent with the medical evidence and other evidence in the record for the reasons explained in this decision." (Tr. 19).

The ALJ, therefore, concluded that "[t]he claimant is capable of performing past relevant work as a weaver. This work does not require the performance of work-related activities precluded by the claimant's residual functional capacity (20 CFR 404.1565)." (Tr. 21). He also found that

4

"there are other jobs existing in the national economy that he is also able to perform," including call-out operator, circuit board assembler, and document preparer. (Tr. 21–22).

## II. STANDARD OF REVIEW

The Court's review "is limited to determining whether the Commissioner's decision is supported by substantial evidence and was made pursuant to proper legal standards." *Winn v. Comm'r of Soc. Sec.*, 615 F. App'x 315, 320 (6th Cir. 2015); *see also* 42 U.S.C. § 405(g). "[S]ubstantial evidence is defined as 'more than a scintilla of evidence but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 241 (6th Cir. 2007) (quoting *Cutlip v. Sec'y of HHS*, 25 F.3d 284, 286 (6th Cir. 1994)).

"After the Appeals Council reviews the ALJ's decision, the determination of the council becomes the final decision of the Secretary and is subject to review by this Court." *Olive v. Comm'r of Soc. Sec.*, No. 3:06 CV 1597, 2007 WL 5403416, at *2 (N.D. Ohio Sept. 19, 2007) (citing *Abbott v. Sullivan*, 905 F.2d 918, 922 (6th Cir. 1990); *Mullen v. Bowen*, 800 F.2d 535, 538 (6th Cir. 1986) (*en banc*)). If the Commissioner's decision is supported by substantial evidence, it must be affirmed, "even if a reviewing court would decide the matter differently." *Id.* (citing 42 U.S.C. § 405(g); *Kinsella v. Schweiker*, 708 F.2d 1058, 1059–60 (6th Cir. 1983)).

## III. DISCUSSION

Plaintiff argues that the ALJ erred in two respects. First, he contends, the ALJ's RFC is not supported by substantial evidence. (Doc. 12 at 3–5). Second, he asserts, the ALJ failed to develop the record regarding his past relevant work experience. (*Id.* at 5–6). The Court addresses each argument in turn.

### A. The ALJ's RFC Analysis

A plaintiff's RFC "is defined as the most a [plaintiff] can still do despite the physical and mental limitations resulting from her impairments." *Poe v. Comm'r of Soc. Sec.*, 342 F. App'x 149, 155 (6th Cir. 2009); *see also* 20 C.F.R. §§ 404.1545(a), 416.945(a). The Social Security regulations, rulings, and Sixth Circuit precedent provide that the ALJ is charged with the final responsibility in determining a claimant's residual functional capacity. *See, e.g.*, 20 C.F.R. § 404.1527(d)(2) (the final responsibility for deciding the residual functional capacity "is reserved to the Commissioner"). This includes resolving conflicts in the medical evidence. *King v. Heckler*, 742 F.2d 968, 974 (6th Cir. 1984). When determining a claimant's RFC, an ALJ is charged with evaluating several factors, including the medical evidence (not limited to medical opinion testimony), and the claimant's testimony. *Henderson v. Comm'r of Soc. Sec.*, No. 1:08-cv-2080, 2010 WL 750222, at *2 (N.D. Ohio Mar. 2, 2010) (citing *Webb v. Comm'r of Soc. Sec.*, 368 F.3d 629, 633 (6th Cir. 2004)).

Here, the ALJ concluded Plaintiff could perform sedentary work with certain limitations. (Tr. 18). Plaintiff takes issue with the postural limitations contained in that conclusion. (*See* Doc. 12 at 4–5). First, he argues that "there is an error in the RFC because it does not explain how long [he] can sit after 20 minutes of standing." (*Id.* at 4). But that omission is the result of a typographical error. (*See id.* (quoting relevant hypothetical from the hearing); Doc. 14 at 5 ("[A]s Plaintiff himself pointed out, this is merely a typographical error in the decision.")). At the hearing, the ALJ posed the following hypothetical to the Vocational Expert ("VE"):

> Assume that this individual is limited as was limited in hypothetical number 2 which was our sedentary hypothetical and I'm going to add to that the individual would need to have the ability to alternate to standing for five minutes after every 30 minutes of sitting would need to alternate to sitting for five minutes after every

> 20 minutes of standing or walking, would your testimony be the same as it was for hypothetical number 2?

(Tr. 54–55). The ALJ then incorporated that hypothetical into his written RFC finding but omitted the limitation that he would need to sit for five minutes after 20 minutes of walking or standing:

> [T]he claimant had the residual functional capacity to perform sedentary work as defined in 20 CFR 404.1567(a), except for the following limitations … Over an eight-hour workday, the claimant can sit for six hours, stand for two hours, and walk for two hours, but will need to alternate to standing for 5 minutes after every 30 minutes of sitting, and alternate to sitting for every 20 minutes of standing or walking.

(Tr. 18).

In short, the record is clear that the ALJ found that Plaintiff would need to sit for five minutes after 20 minutes of walking or standing. And where the reasoning for an ALJ's decision is made clear by the record as a whole, a typographical error in the written decision does not, on its own, warrant remand. *Wood v. Comm'r of Soc. Sec.*, No. 2:18-CV-1098, 2019 WL 3543087, at *6 (S.D. Ohio Aug. 5, 2019), *report and recommendation adopted*, No. 2:18-CV-1098, 2019 WL 4193361 (S.D. Ohio Sept. 4, 2019) (collecting cases).

Plaintiff's second argument is similarly unpersuasive. He contends that the ALJ's RFC finding is internally contradictory because it limits him to a maximum of two hours of standing but requires him to stand for a total of more than two hours. (Doc. 12 at 5). If this were true, the Court would have little trouble ordering a remand here. But beyond a conclusory assertion, Plaintiff makes no effort to demonstrate that it is, in fact, true. Having independently reviewed the RFC, the Court finds that it does not require Plaintiff to stand for more than two hours during an eight-hour workday. Plaintiff, therefore, has not demonstrated that the ALJ's RFC is unsupported by substantial evidence.

## B. Development of the Record Regarding Plaintiff's Past Relevant Work

The regulations define "past relevant work" as "work that you have done within the past 15 years, that was substantial gainful activity, and that lasted long enough for you to learn to do it." 20 C.F.R. § 404.1560(b)(1). "[T]he claimant bears the burden of proving … the fact that she is precluded from performing her past relevant work." *Jones v. Comm'r of Soc. Sec.*, 336 F.3d 469, 474 (6th Cir. 2003). Satisfying this burden requires a claimant to demonstrate that she cannot perform her past relevant work as "actually performed" and as "generally required by employers throughout the national economy." SSR 82–61, 1982 WL 31387, at *2 (1982).

Here, Plaintiff argues that the ALJ erred by failing to question him regarding his past relevant work history. (*See* Doc. 12 at 5–6). As a result, Plaintiff contends, "the ALJ did not fulfill his role under step four and there are no factual findings to support the conclusion that [he] can do his past relevant work as a weaver …" (*Id.* at 6). Significantly, Plaintiff cites no authority to support his argument.

The regulations, however, provide the necessary guidance: In determining whether a claimant can perform their past relevant work, Defendant "will ask [a claimant] for information about work [they] have done in the past," and it "may use the services of vocational experts or vocational specialists … to obtain evidence" to determine whether a claimant "can do [their] past relevant work, given [their] residual functional capacity." 20 C.F.R. § 404.1560(b)(2). As this provision makes clear, an ALJ does not err by relying on a VE to develop the record regarding a claimant's past relevant work experience. And, as Plaintiff concedes, the ALJ did exactly that in this case. (*See* Doc. 12 at 6 ("[T]he ALJ relied upon the vocational expert's classification of the past work and *questioning* of Mr. Duvall.")). Because Plaintiff makes no argument that the VE's

8

questioning regarding his past relevant work was itself insufficient, there is no basis for a finding of error.

## IV. CONCLUSION

For the reasons stated, Plaintiff's Statement of Errors (Doc. 12) is **OVERRULED**, and judgment is entered in favor of Defendant.

IT IS SO ORDERED.


Date: January 8, 2020 /s/ Kimberly A. Jolson
KIMBERLY A. JOLSON
UNITED STATES MAGISTRATE JUDGE